54 P.3d 470

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Randal Ray BILLINGS, aka Rudy Reed, Charles Lester Weber, Greg Butch Davis, Butch Weber; Clyde Logan Hoff, Defendant–Appellant.**

No. 26428.

Court of Appeals of Idaho.

Sept. 4, 2002.

Molly J. Huskey, Interim State Appellate Public Defender; Richard J. Hansen, Deputy Appellate Public Defender, Boise, for appellant. Richard J. Hansen argued.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

LANSING, Judge.

Randal Ray Billings was convicted of aggravated battery and aggravated assault as a consequence of firing his shotgun into the ground near two men. Pellets from the second shot ricocheted off the ground and struck one of the men. Billings appeals the aggravated battery conviction, contending that the trial evidence was insufficient to prove guilt because it did not show that Billings intended to strike the victim.

## I.

## BACKGROUND

On Christmas Day, 1993, Rex Merchant was attending a late afternoon Christmas dinner at the home of his brother-in-law and neighbor, Art Foss. During dinner, Foss and Merchant heard gunshots coming from Merchant's property. Since no one had permission to hunt on Merchant's land, he and Foss drove to Merchant's property to investigate. As they arrived, they saw a car departing. Merchant and Foss stopped the car and asked the driver, Rodney White, and his passenger, Billings, what they were doing. Billings and White said that they had driven onto Merchant's property to obtain permission to hunt but, finding no one at home, they were leaving. They acknowledged that before they were off Merchant's property, they fired two shots.

Billings and White then started to drive away, but Foss reached through the passenger window of the moving vehicle to either grab or hit Billings. White immediately stopped the car, and Billings exited with his 12-gauge shotgun and shouted, "No mother f—— is going to hit me and get by with it." Billings then aimed his shotgun to the right of Merchant and Foss and fired into the ground. Next, Billings told Foss that Billings was "going to blow him to hell." Billings then fired another shot into the ground near Merchant and Foss.[1] Pellets from the shotgun shell ricocheted off the ground, striking Merchant in the elbow, throat, and side. The pellets punctured Merchant's skin and caused him to bleed.

Billings was charged with aggravated assault, Idaho Code §§ 18–901, –905, based on the first shot, and with aggravated battery on Merchant, I.C. §§ 18–903, –907, for the second shot. Following a jury trial, he was found guilty of both charges.

While free on bond awaiting sentencing, Billings fled the state and remained at large

---

1. Merchant testified that the second shot hit the ground "like on my right foot, just two or three inches over," while Foss testified that it hit six to eight feet away.

until August 1999, when he was arrested in Colorado. He was ultimately returned to Idaho and sentenced to concurrent one-year fixed terms of imprisonment.

On appeal, Billings does not challenge his conviction for aggravated assault, but contends that the evidence was insufficient to support the finding of guilt on the aggravated battery charge. The State, in addition to contesting Billings' argument, also asserts that by absconding before sentencing, Billings waived his right to appeal.

## II.

## ANALYSIS

### A. Absconding

■ We address first the State's assertion that Billings forfeited his right to an appellate remedy by fleeing the jurisdiction before he was sentenced. Whether to dismiss an appeal because the appellant absconded is discretionary with the appellate court. *State v. Schneider,* 126 Idaho 624, 626, 888 P.2d 798, 800 (Ct.App.1995).

The Idaho Supreme Court recently addressed an identical issue in *State v. Nath,* 137 Idaho 712, 52 P.3d 857 (2002), a case in which the defendant was at large for three years following a guilty verdict and before imposition of sentence. The Supreme Court declined to dismiss the appeal, noting:

> The affront in this case was to the jurisdiction of the district court. That court had ample powers to remedy the wrong that occurred, including consideration of the conduct in imposing sentence. Regardless of the flight, the appellate issues remained the same. This Court can decide them as well following the flight as before.

*Id.* (citation omitted). Prior to *Nath,* this Court reached a similar conclusion in *Schneider,* where we denied the State's motion to dismiss because the appellant's short-term fugitive status during the pendency of the appeal did not interfere with the appellate process. *Schneider,* 126 Idaho at 627, 888 P.2d at 801.

Consistent with *Nath* and *Schneider,* we will address the merits of Billings' appeal.

### B. Sufficiency of the Evidence

■ Billings contends that his conviction for aggravated battery cannot be sustained because the trial evidence was insufficient to prove the mental element of battery—that Billings intentionally or willfully caused the pellets from the shotgun shell to hit Merchant. The evidence is clear, Billings avers, that he did not shoot at Merchant or Foss and that Merchant's being struck by ricocheting pellets was unintended.

The State responds that the only intent the State was required to prove was that Billings intended to fire the shotgun. According to the State, Billings may be convicted of aggravated battery even absent any intent to cause a physical contact with Merchant's body. Because it was uncontroverted that Billings intended to fire the shotgun, the State argues, the burden of proof on the mental element of the offense was clearly satisfied.

Thus, although Billings presents the issue on appeal as an ordinary sufficiency of the evidence question, the parties' divergent interpretations of the mental element for battery require that we first determine what mental state is necessary for a commission of battery. We will then address whether there was adequate evidence presented at trial to meet the State's burden on that element.

■ The elements of a crime are those established by the legislature in defining the offense. *Matthews v. State,* 122 Idaho 801, 805, 839 P.2d 1215, 1219 (1992); *State v. Rogerson,* 132 Idaho 53, 56, 966 P.2d 53, 56 (Ct.App.1998). The offense of battery is legislatively defined in I.C. § 18–903 as follows:

> A battery is any:
>
> (a) Willful and unlawful use of force or violence upon the person of another; or
>
> (b) Actual, intentional and unlawful touching or striking of another person against the will of the other; or
>
> (c) Unlawfully and intentionally causing bodily harm to an individual.[2]

---

2. The charged battery in this case was alleged to be aggravated because it involved use of a deadly weapon. *See* I.C. § 18–907(1)(b).

In the present case, the jury was instructed on all three of these alternative means of committing battery. Billings argues that under any of the subsections, an intent to cause physical contact or touching is necessary, whereas the State takes the position that an intent to cause a touching or striking of the victim is entailed only for battery as defined under subsection (b).

On this issue, Billings prevails based upon the plain language of the statute. As to subsection (a), the culpable state of mind is specified to be "willful." The meaning of this word is illuminated by I.C. § 18–101(1), which states: "The word 'wilfully,' when applied to the intent with which an act is done or omitted, implies simply *a purpose or willingness to commit the act . . . referred to.* It does not require any intent to violate law, or to injure another, or to acquire any advantage." (Emphasis added.) The "act referred to" in the definition of battery under subsection (a) of § 18–903 is the "use of force or violence upon the person of another." Thus, proof of a violation of subsection (a) requires a showing that the accused purposely used force or violence upon the victim's body. Although it is not necessary that the defendant know that the act is illegal or intend that it cause bodily injury, it is necessary that the defendant intend a forceful or violent contact with the other person.

■■■ As to subsections (b) and (c), the requisite culpable state of mind is intent. Idaho Code § 18–114 instructs that "[i]n every crime or public offense there must exist a union, or joint operation, of act and intent . . . ." This intent is "not an intent to commit a crime, but is merely the intent to knowingly perform the interdicted act . . . ." *State v. Parish,* 79 Idaho 75, 78, 310 P.2d 1082, 1083 (1957) (quoting *State v. Taylor,* 59 Idaho 724, 738, 87 P.2d 454, 460 (1939)). *See also State v. Fox,* 124 Idaho 924, 926, 866 P.2d 181, 183 (1993); *State v. Nastoff,* 124 Idaho 667, 670, 862 P.2d 1089, 1092 (Ct.App.1993). The "interdicted acts" in the definitions of battery under § 18–903(b) and (c) are, respectively,

"touching or striking of another person against the will of the other" and "causing bodily harm to an individual." It follows that a conviction for violation of subsection (b) requires proof of intent to touch or strike another person, and the intent element to be proved under subsection (c) is intent to cause bodily harm to a person.

In the present case, then, the State was required to prove that Billings intended to cause the shotgun pellets to strike Merchant.[3] The State's argument that the prosecutor needed to prove only that Billings intended to pull the trigger on the shotgun is meritless. That argument would be well taken only if the "interdicted act" prohibited by I.C. § 18–903 was the mere shooting of a firearm, but that is not the scope of the acts that the statute prohibits.

We now advance to consideration of the issue as framed by Billings—whether there is adequate evidence to prove that Billings intended to cause shotgun pellets to hit Merchant.

■■■ When reviewing a verdict rendered by a properly instructed jury, we will not disturb the verdict if there is substantial evidence upon which any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Thomas,* 133 Idaho 172, 174, 983 P.2d 245, 247 (Ct.App.1999); *State v. Peite,* 122 Idaho 809, 823, 839 P.2d 1223, 1237 (Ct.App.1992). We are obliged to construe all facts and reasonable inferences in favor of upholding the jury's verdict, *Nastoff,* 124 Idaho at 671, 862 P.2d at 1093; *Peite,* 122 Idaho at 823, 839 P.2d at 1237, and we will not substitute our opinion for that of the jury as to the credibility of witnesses or the weight to be assigned their testimony. *State v. Gonzalez,* 134 Idaho 907, 909, 12 P.3d 382, 384 (Ct.App. 2000); *State v. Buckley,* 131 Idaho 179, 181, 953 P.2d 619, 621 (Ct.App.1997).

■■■ Applying this deferential standard of review, we conclude that there was sufficient trial evidence to support the jury's

---

3. This appeal does not require consideration of the doctrine of "transferred intent" under which a defendant's intent to strike one person may satisfy the mental element even though the shots fired by the defendant actually hit a different person. *See generally* 1 LaFave and Scott, Substantive Criminal Law, § 3.11(d) (1986).

finding that the State had proved aggravated battery, including the intent element. Criminal intent may be inferred from the defendant's actions and surrounding circumstances. *State v. Warden,* 100 Idaho 21, 24, 592 P.2d 836, 839 (1979); *State v. Oldham,* 92 Idaho 124, 132, 438 P.2d 275, 283 (1968); *State v. Belue,* 127 Idaho 464, 467, 902 P.2d 489, 492 (Ct.App.1995). Although there was no direct evidence that Billings intended that his shotgun pellets would strike Merchant, facts were presented from which such an intent could be inferred. The nature of the weapon used is of fundamental importance. Billings did not use a weapon that fired a bullet, but one that fired a shotgun shell containing scores of pellets that spray out when the weapon is fired. The trial evidence included Billings' own testimony that he was well-experienced in the use of a shotgun and was "a pretty good shot." He also acknowledged that if shotgun pellets hit the ground, "when there's gravel and stuff there, they can ricochet." From this evidence, the jury could reasonably infer that when Billings fired his shotgun into the ground near Merchant, he expected and intended that ricocheting pellets would strike Merchant. Although we agree with Billings that there is no evidence upon which it could be found that he aimed the shot at Merchant or intended to shoot directly at Merchant, such a finding is not essential to the guilty verdict; intent that some of the shotgun pellets would hit Merchant is sufficient.

Accordingly, the judgment of conviction is affirmed.

Chief Judge PERRY and Judge GUTIERREZ concur.